(No. 5124-

LINDA EVELAND SHIRAR, Administrator of the Estate of DUANE WELCH EVELAND, Deceased, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 9, 1965.*

DOWNING, SMITH, JORGENSEN AND UHL, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

PERLIN, C. J.

Claimant, as Administrator of the Estate of Duane Welch Eveland, seeks recovery of $25,000.00 for his death, which occurred as a result of an accident on March 8, 1963 at the intersection of State Route No. 133 and a road known as Jonathan Creek Road in Moultrie County, Illinois.

Claimant contends that the failure of respondent to maintain a "Stop Ahead" warning sign approximately 1,000 feet from the intersection constituted negligence, and that such negligence was the proximate cause of the collision, in that one Rheta J. Hobbs was not sufficiently warned of her obligation to stop at the intersection, and thus collided with the automobile driven by Duane Welch Eveland. It appears that claimant received $4,000.00 from the insurance company, which issued a liability policy to Rheta J. Hobbs.

In order to recover in the present action, claimant must prove by a preponderance of the evidence (1) that claimant's intestate was free from contributory negligence; (2) that respondent was negligent; and (3) that such negligence was the proximate cause of the damage alleged.

The record shows that on March 8, 1963 at approximately 1:30 P.M., Duane Welch Eveland, age 20, was driving a red 1960 Valiant in a westerly direction along and upon Route No. 133. At the same time, Rheta J. Hobbs, age 21, was driving a white 1959 Ford automobile in a northerly direction along Jonathan Creek Road near its intersection with Route No. 133. Route No. 133 is a preferential highway to Jonathan Creek Road. A stop sign controls Jonathan Creek Road at its intersection with Route No. 133. Other signs controlling the traffic on Jonathan Creek Road included a broken "Stop ahead" sign 750 feet south of the intersection, a "Junction-Information" sign 500 feet south of the intersection, and a directional sign 300 feet south of the intersection.

Eyewitness Lester Schrock testified as follows: He was stopped at a sign controlling the traffic going south at the intersection of Jonathan Creek Road and Route No. 133. He saw a westbound red Valiant (driven by Eveland) approach the intersection on Route No. 133, and a 1959 white Ford (driven by Rheta J. Hobbs) coming towards him north on Jonathan Creek Road. Both cars entered the intersection at

the same time and collided, the left front fender of the Valiant striking the right front fender of the Ford. The white Ford did not appear to stop prior to entering the intersection, nor did Schrock hear a horn or the sound of brakes. He saw no skid marks at the scene subsequent to the collision. There was a stop sign in place governing Jonathan Creek Road as it entered the intersection of Route No. 133. The day was sunny and bright. Schrock had no trouble seeing the intersection or the stop sign. Within a distance of at least 500 feet from the intersection the terrain is level in all directions. The "Stop Ahead" sign governing the northbound traffic on Jonathan Creek Road was down, but the "Junction with Route No. 133" and a directional sign were in place at the time of the accident. Schrock estimated that the red Valiant was traveling at approximately 60 to 65 miles per hour, and that the Ford was perhaps traveling at a lesser rate, but he could not tell accurately, since he was in front of the Ford.

Robert Davison, testified that he lived four miles from the intersection, and had observed that the "Stop Ahead" sign was down both the day of the accident and the weekend before it occurred. The stop sign at the intersection of Route No. 133 and Jonathan Creek Road was standing in place on the day of the accident. The stop sign is red and silver, and is not concealed, although it does not stand out against the horizon. The Junction sign and the directional signs were in place the day of the accident. They were black and white signs, and the broken sign was yellow with black letters.

William C. Hays testified he observed that the "Stop Ahead" sign in question was broken off the post on December 27, 1962, and on the day of the accident when he was taking pictures of the accident scene. The junction sign and the directional sign, as well as the stop sign, were in place

on March 8, and are signs meant for traffic going north on Jonathan Creek Road. He stated that the stop sign is the ordinary and customary stop sign, red with white lettering; it is octagonal in shape, a fairly large regulation sign, and was in place right after the accident occurred.

A deposition of Rheta J. Hobbs revealed that she remembered nothing about the accident or any events occurring prior to the time of the collision. Unfortunately, the two adult passengers in her car were also killed. The two minor passengers were children too young to testify. Miss Hobbs stated she had never traveled by automobile in the area where the accident occurred.

Harold Roberts, District Traffic Engineer, Illinois Division of Highways, testified that a 30 inch "Stop Ahead" sign was placed 750 feet south of the intersection; a combination junction-information sign was placed 500 feet south of the intersection; a directional sign was erected 300 feet south of the intersection; and a 24 inch "Illinois Route No. 133" sign with double arrows was placed near the intersection. All of these signs faced south on Jonathan Creek Road. He further testified that at 65 miles per hour a vehicle's stopping distance is 380 feet, with an additional 72 feet allowance for traveling distance and reaction time, for a total stopping distance of 452 feet. In response to the question as to whether the construction of the "Stop Ahead" sign at the location was consistent with the policy of his office, Roberts replied: "There was a choice, and I chose to erect it."

Donald R. Goodwin, District Safety Representative for the Illinois Division of Highways, testified that he investigated the accident in question, and went to the site on March 11, 1963. He stated that Illinois Route No. 133 was the preferential road, and that the traffic on Jonathan Creek Road is required to stop by a stop sign located just to the

right of the northbound lane on Jonathan Creek Road. The "Stop Ahead" sign was broken off the post, but the other signs were in place. The sight distance to one traveling north on Jonathan Creek Road is clearer than a thousand feet, and the road is straight for that distance, with a slight downgrade from the south of Route No. 133 on Jonathan Creek Road, according to Mr. Goodwin.

Whether respondent has breached a statutory duty in its failure to maintain the "Stop Ahead" sign may be determined by the following:

Chap. 95½, Secs. 125, and 126, Ill. Rev. Stats.

*"Department to adopt sign manual.* The Department shall adopt a manual and specifications for a uniform system of traffic control devices consistent with the provisions of this Act for use upon highways within this State. The manual shall also specify insofar as practicable the minimum warrants justifying the use of various traffic control devices."

*"The Department to Place Signs on All State Highways.* (a) The Department shall place and maintain such traffic control devices, conforming to its manual and specifications, on all highways under its jurisdiction, as it shall deem necessary to indicate and to carry out the provisions of this Act, or to regulate, warn, or guide traffic."

Manual of Uniform Traffic Control Devices for

Streets and Highways (January, 1958), P. 23.

"The STOP AHEAD (S-32 or S-32A) sign shall be used in advance of a Stop sign that is not visible for a sufficient distance to permit the driver to bring his vehicle to a stop at the Stop Sign. It *may* also be used for emphasis on a State route when there is poor observance of the Stop Sign. When used in this manner in advance of a junction of another State route, it shall be erected 400 feet in advance of the I-8 or I-8A sign. (Stop Ahead-Junction.)" (Emphasis supplied.)

Testimony detailed above has established that the stop sign in question was visible for a distance of 1,000 to 500 feet. It was further established that the total stopping distance required for a vehicle traveling at 65 miles per hour is 452 feet. Therefore, the "Stop Ahead" sign in question was not mandatory within the foregoing statutory requirements, but only permissive and need not have been placed at the location in question at all. The Court concludes it must follow that failure to maintain a sign which was not required

to be placed in the first instance, in no way constitutes negligence.

The Motor Vehicle Act, Chap. 95½, Ill. Rev. Stats., also provides that it shall be unlawful for any person to operate a motor vehicle on the public highways of this State without complying with the Illinois Motor Vehicle Law (Sec. 3-811); that the driver of a vehicle approaching a stop sign shall stop before entering the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting highway (Sec. 183); and that the driver of a vehicle shall stop, as required by Sec. 183, at the entrance to a through highway and shall yield the right-of-way to other vehicles, which have entered the intersection from said through highway (Sec. 167b.)

The Court further notes that the Junction sign was placed 500 feet before the stop sign, which gave Rheta J. Hobbs sufficient warning of the crossroad to have stopped her vehicle had she not been grossly negligent in disregarding all signs, including the clearly visible stop sign. It appears to have been her negligence and her negligence alone, which prevented her from stopping her vehicle at the stop sign of the intersection, and apparently caused the tragic accident resulting in the death of Duane Welch Eveland. The Court cannot indulge in pure speculation to ascertain facts, which cannot be adduced by competent evidence.

Because claimant has failed to prove that respondent was negligent, or that its negligence was the proximate cause of the accident, the claim must be and is hereby denied.